540 So.2d 1261 (1989)
Narron HAWTHORNE, Plaintiff-Appellee,
v.
LOUISIANA DEPARTMENT OF PUBLIC WORKS, Defendant-Appellant.
No. 87-1257.
Court of Appeal of Louisiana, Third Circuit.
March 15, 1989.
Rehearing Denied April 12, 1989.
Writ Denied June 2, 1989.
Jack F. Owens, Harrisonburg, for plaintiff-appellee.
James Fredericks, Baton Rouge, for defendant-appellant.
Before DOMENGEAUX, FORET and YELVERTON, JJ.
FORET, Judge.
In separate actions, plaintiffs, Narron Hawthorne and Travis and Dean B. Cooper, instituted suit against the State of Louisiana, Department of Transportation & Development (referred to in plaintiffs' petitions as the Louisiana Department of Public Works) for damages resulting from the inundation of their property located in Catahoula Parish. The two actions were consolidated for trial and the trial court rendered judgment in favor of all plaintiffs and defendant has appealed.[1] Plaintiffs have answered the appeal, asking that the trial court's award of attorney's fees be increased and further requesting that attorney's fees be awarded on appeal.

FACTS
The pertinent facts of this case are not in dispute. In 1960, the United States Congress enacted the River and Harbor Act. This act authorized the construction of the Ouachita-Black River Navigation Project in an effort to promote navigation on the Ouachita and Black Rivers. The Jonesville Lock and Dam, being a part of this project, was completed and placed in operation on March 28, 1972. In essence, it created a pool of water in the Ouachita River which is commonly referred to as the "Jonesville Pool." In order to maintain a navigation channel along the Ouachita River of at *1262 least nine feet deep and one hundred feet wide, as provided in the River and Harbor Act of 1960, the water in the Jonesville Pool is maintained at 34 feet mean sea level as compared to a prior mean sea level of 21.5 feet which was maintained prior to the construction of the Jonesville Lock and Dam. This increase in mean sea level in the Jonesville Pool has resulted in a similar increase in mean sea levels of Rawson Creek (which flows into the Jonesville Pool), Gastis Creek (which flows into Rawson Creek), and Dry Lake (a tributary of Rawson Creek). The property owned by plaintiff, Narron Hawthorne, borders Gastis Creek, while the property owned by Travis and Dean B. Cooper lies along Dry Lake.
The trial court found that the increase in the mean sea level of the Jonesville Pool resulted in the permanent flooding of property owned by plaintiffs, most if not all of which was only periodically flooded prior to the construction of the Jonesville Lock and Dam. Considering this, the trial court awarded to plaintiff, Narron Hawthorne, damages in the amount of $1,450 and awarded to plaintiffs, Travis and Dean B. Cooper, damages in the sum of $31,500. For the reasons hereinafter assigned, we reverse the judgment of the trial court and render judgment in favor of defendant, State of Louisiana, Department of Transportation and Development.
The claims asserted by plaintiffs herein are for damages resulting from the unauthorized flooding of their property by the State of Louisiana, Department of Transportation and Development. Plaintiffs seek compensation for the value of the property taken, severance damages (decrease in value of remaining property), loss of revenue, and expenses incurred as a result of plaintiffs' having to travel longer distances to gain access to their respective properties.[2] The taking of property, by flooding or otherwise, without proper exercise of eminent domain, is not a tort but is considered an appropriation. Bernard v. State, 127 So.2d 774 (La.App. 3 Cir.1961); Boothe v. Dept. of Public Works, 370 So.2d 1282 (La.App. 3 Cir.1979), writ denied, 374 So.2d 661 (La.1979). In the latter case, the court dealt with an almost identical claim arising out of the construction of the Jonesville Lock and Dam and resulting increase in the mean sea level of Rawson Creek. In Boothe, we stated the following, at page 1284:
"As we approach the first issue as to whether the plaintiffs' had a legal right to use the "ford" across the creek, we must first point out that the trial court, in its reasons for judgment, stated that this proceeding was a tort action and the trial court treated the cause as such. This conclusion of the trial court was error. This is not a tort action but one of appropriation. The Department of Public Works did not file expropriation proceedings on the property owned by the plaintiffs. In this situation, where one's property is taken or damaged by a public body without expropriation proceedings, the owners of such property are still entitled to redress. Reymond v. Department of Highways, 255 La. 425, 231 So.2d 375 (1970); La.Const.1974, Art. 1, § 4. The taking of such property without the proper exercise of eminent domain, however, is not a tort but an appropriation. Department of Highways v. Mouledous, 199 So.2d 185 (La. App. 3rd Cir.1967), writ denied 250 La. 934, 199 So.2d 927 (1967)."
We therefore have little difficulty in finding that the claims asserted by plaintiffs herein are not founded in tort inasmuch as they are based upon and arise out of an alleged appropriation of their respective properties without prior exercise of eminent domain.
*1263 Having made this determination, we must now decide whether or not the claims asserted by plaintiffs are barred by the prescriptive period provided by La.R.S. 13:5111, which states as follows:
"§ 5111. Appropriation of property by state, parish, municipality or agencies thereof; attorney, engineering and appraisal fees; prescription
A. A court of Louisiana rendering a judgment for the plaintiff, in a proceeding brought against the state of Louisiana, a parish, or municipality or other political subdivision or an agency of any of them, for compensation for the taking of property by the defendant, other than through an expropriation proceeding, shall determine and award to the plaintiff, as a part of the costs of court, such sum as will, in the opinion of the court, compensate for reasonable attorney fees actually incurred because of such proceeding. Any settlement of such claim, not reduced to judgment, shall include such reasonable attorney, engineering, and appraisal fees as are actually incurred because of such proceeding. Actions for compensation for property taken by the state, a parish, municipality, or other political subdivision or any one of their respective agencies shall prescribe three years from the date of such taking.
B. The rights of the landowner herein fixed are in addition to any other rights he may have under the constitution of Louisiana and existing statutes, and nothing in this Part shall impair any constitutional or statutory rights belonging to any person on September 12, 1975.
Acts 1975, No. 434, § 1."
See also, Jungeblut v. Parish of Jefferson, 485 So.2d 974 (La.App. 5 Cir.1986); Powell v. Department of Highways, 383 So.2d 425 (La.App. 4 Cir.1980), writ denied, 389 So.2d 1129 (La.1980). Plaintiffs claim that the prescriptive period did not begin to run until such time as Boothe v. Department of Public Works, supra, was decided by our Circuit. Until such time, plaintiffs assert they were unaware that a cause of action existed, having relied upon prior communications from the Corps of Engineers which supposedly indicated that no compensation was due to landowners in the area of the Jonesville Pool whose property was inundated as a result of the construction of the Jonesville Lock and Dam.[3] Plaintiffs' argument in this regard fails to recognize the important distinction between ignorance of facts and ignorance of legal rights based upon known facts. The cases cited by plaintiffs stand for the well-recognized principle that prescription does not begin to run until such time as the claimant is made aware of those facts which give rise to a cause of action. In Jungeblut v. Parish of Jefferson, supra, cited in plaintiffs' brief, a drainage canal was constructed by the Parish of Jefferson on property believed to be owned by the City of Kenner. The canal was constructed in 1966, and plaintiff's ownership was not discovered until a survey was performed in 1978. Defendants invoked the three-year prescriptive period of R.S. 13:5111 and the court of appeal affirmed the holding of the trial court, overruling the exception of prescription. In doing so, the court found that "the running of prescription under R.S. 13:5111 did not begin until the plaintiffs discovered the encroachments in 1978." Similarly, in Powell v. Department of Highways, supra, the court held that the prescriptive period under R.S. 13:5111 did not begin to run until such time as the plaintiffs discovered the unauthorized encroachment upon their property by the Department of Transportation and Development. However, while it is true that prescription does not begin to run until discovery of facts which give rise to a cause of action, it is equally clear that ignorance of one's legal rights based upon known facts does not suspend or delay the running of prescription. In Knighten v. Knighten, 447 So.2d 534 (La.App. 2 Cir. 1984), writ denied, 448 So.2d 1303 (La. 1984), plaintiff claimed that prescription did *1264 not begin to run until she had consulted an attorney and was advised of her rights. In rejecting this argument, the court stated the following:
"The curatrix contends that the prescriptive period did not begin to run until sometime in April, 1982 when she learned she had a cause of action to have the separation of property agreement set aside. She cites for authority the principle that the one year prescriptive period of La.C.C. 3536 commences to run from the date the injured party discovered or should have discovered the existence of facts that would enable him to bring suit. La.C.C. 3537; Cherokee Restaurant, Inc. v. Pierson [428 So.2d 995 (La.App. 1st Cir.1983) ] supra.
"The curatrix' reliance on the above principle is misplaced. She was aware of the facts that enabled her to bring suit from the time they occurred. She was aware of all the facts regarding the marriage between plaintiff and her son by virtue of her own knowledge. She was advised of all the facts surrounding her appointment as curatrix, the tort settlement, and the matrimonial agreement by her attorney and Judge Norris and there is an abundance of evidence in the record which establishes these determinations. It was her rights under those facts that she allegedly did not know about. The ignorance of one's rights does not toll the running of prescription. Smith v. Tyson, 193 La. 571, 192 So. 61 (1939); Jackson v. Zito, 314 So.2d 401 (La.App. 1st Cir.1975); Wingate v. National Union Fire Ins. Co., [435 So.2d 594 (La. App. 3d Cir.1983) ] supra. The one year prescription period began to run by at least December 4, 1981. The trial court correctly decided that defendant's third party demand had prescribed."
See also, Shushan, Meyer, Jackson, et al v. Machella, 483 So.2d 1156 (La.App. 5 Cir.1986), in which case this same argument was rejected by our brothers in the Fifth Circuit, with the court reiterating the well established principle that "ignorance of one's rights does not toll the running of prescription." Finally, in Jackson v. Zito, 314 So.2d 401 (La.App. 1 Cir.1975), writs denied, 320 So.2d 551, 320 So.2d 553 (La. 1975) the court held that plaintiff's ignorance of his cause of action did not delay the running of prescription. The court further held that ignorance of one's rights is not sufficient to invoke the doctrine of "contra non valentem."
Turning now to the facts of the instant case, it was stipulated at trial that plaintiffs herein were aware of the permanent flooding of their respective properties since the spring and summer of 1972, when the water first failed to subside and drain away as it had done prior to the construction of the Jonesville Lock and Dam. It was only their rights under these known facts that plaintiffs were allegedly unaware of until such time as the Boothe case was decided. We therefore find that prescription on plaintiffs' claims began to run, at the latest, at the end of the summer of 1972, at which time it was stipulated that plaintiffs were fully aware of the permanent inundation of their properties resulting from the operation of the Jonesville Lock and Dam. Accordingly, the claims asserted by plaintiffs herein prescribed three years from such date in accordance with the provision of R.S. 13:5111. Hawthorne filed his suit on April 23, 1981, and the Coopers' suit was filed on July 25, 1980. Nothing prevented plaintiffs from instituting suit on an earlier date, as was done by the plaintiffs in Boothe[4]. They chose not to do so and their misunderstanding, if any there be, as to their legal rights did not toll the running of the prescriptive period under R.S. 13:5111. Accordingly, we find that the claims asserted by plaintiffs herein, Narron Hawthorne, and Travis and Dean B. Cooper, have prescribed in accordance with the aforesaid statute.
In view of our decision on the issue of prescription, plaintiffs' requests, by answer *1265 to appeal, for increase in the trial court's award of attorney's fees and for additional attorney's fees on appeal are hereby denied.
Considering the above and foregoing, the judgment of the trial court is reversed, and judgment is hereby rendered as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of defendant, State of Louisiana, Department of Transportation and Development (referred to in plaintiffs' petitions as the Louisiana Department of Public Works), dismissing all claims asserted by plaintiffs, Narron Hawthorne and Travis and Dean B. Cooper, with prejudice.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that costs at the trial level and on appeal are assessed against plaintiffs, Narron Hawthorne and Travis and Dean B. Cooper.
REVERSED AND RENDERED.
NOTES
[1] A separate opinion is being rendered this date in Cooper v. State, Louisiana Department of Public Works, 540 So.2d 1265 (La.App. 3 Cir.1989).
[2] Merlin A. Pistorious, Engineer for the Louisiana Department of Transportation and Development, Office of Public Works, testified at length concerning the procedures employed in acquiring property for the subject project. According to Pistorious, the Corps of Engineers did not instruct the Department of Public Works to purchase any property or flowage easements in the area of the Jonesville Pool because all lands to be inundated upon completion of the Jonesville Lock and Dam project fell within the navigational servitude granted by the commerce clause of the United States Constitution to the Federal Government.
[3] Plaintiffs' argument in this regard is unsubstantiated by the evidence. The letter from the Corps of Engineers attached to plaintiffs' brief and upon which plaintiffs' reliance is based, was not filed into evidence at trial nor was there any testimony or other evidence presented at trial indicating that plaintiffs were in error as to their legal rights.
[4] We should also point out that, contrary to plaintiffs' assertions, the issue of prescription was not considered by the court of appeal in Boothe, and the opinion does not provide sufficient facts for us to determine whether or not such a defense, based on R.S. 13:5111, could have been successfully raised in that case.